### JOSEPH HELLEN *vs.* CITY OF MEDFORD.

Middlesex.    May 20, 1904. — April 28, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Constitutional Law,* Vested rights.    *Medford.    Waiver.*

St. 1900, c. 196, providing that the park commissioners of Medford might by a deed acknowledged and recorded abandon any part of the land or rights in land taken by them under statutory authority on a certain date and that such abandonment should revest the title as if no taking had been made and might be pleaded in reduction of damages in any suit on account of those takings, is unconstitutional as violating the vested rights to compensation of an owner and of a lessee of land taken in fee by the park commissioners on the date named.

The right to object to a statute as unconstitutional on the ground that it violates vested rights may be waived.

After certain land had been taken in fee by park commissioners under statutory authority a statute was passed authorizing them to abandon any land taken on a certain day and providing that such abandonment might be pleaded in reduction of damages in any suit on account of the taking. The owner of land which thus had been taken and abandoned agreed with the city for which the park commissioners took the land that if his land was abandoned by the city for his benefit his damages would be very small, if any, and that $1,000 would be a reasonable sum for him under that agreement. *Held,* that the landowner had waived the right to set up the unconstitutionality of the statute as violating his vested right to compensation for the taking of his land in fee.

PETITION, filed in the Superior Court for the county of Middlesex on October 15, 1900, under St. 1882, c. 154, § 5, for the assessment by a jury of damages for the taking of certain land of the petitioner on the Mystic River for a portion of a park. Dana B. Cutter, the lessee of the land at the time of the taking, was cited into the case by the petitioner Hellen.

At the trial in the Superior Court *Sherman,* J. ordered a verdict for the petitioner Hellen in the sum of $1,159.25, $1,000 being the damage found by the jury and $159.25 the interest thereon. At the request of the petitioner Hellen and of the lessee Cutter, made a petitioner as above stated, the judge reported the case for determination by this court, such judgment to be entered as upon the facts the law might require. The facts are stated in the opinion.

The case was submitted on briefs at the sitting of the court in May, 1904, and afterwards was submitted on briefs to all the justices.

*S. H. Tyng & M. L. Sanborn,* for the petitioners Hellen and Cutter.

*J. M. Hallowell & H. H. Kimball,* for the respondent.

HAMMOND, J.    Under the authority of St. 1882, c. 154, § 3, the park commissioners of Medford took certain land, and on November 29, 1899, filed a certificate as required by the fourth section.    No entry ever was made upon the land.    The taking was simply on paper.    By virtue of the proceedings, however, the respondent became the owner in fee of the land and was bound to pay to those whose estate had been taken the damages respectively suffered by them.    St. 1882, c. 154, §§ 3, 6.    *Hay* v. *Commonwealth,* 183 Mass. 294.    At the time of the taking the land was owned by the petitioner Hellen in fee subject to an outstanding leasehold estate for years owned by one Cutter.    It does not appear that the damages ever were estimated or determined by the commission.    Several months after the taking and while the parties were trying to come to some agreement as to the damages and before any agreement had been reached or any proceedings had been taken in court, St. 1900, c. 196, was enacted.    It provided that any part of the land or rights in land taken and described in the certificate of November 29, 1899, might in the manner set forth in the statute be abandoned, that such abandonment should " revest the title to such lands or rights as if they had never been taken, in the persons, their heirs and assigns, in whom it was vested at the time of taking," and also that the abandonment might " be pleaded in reduction of damages in any suit on account of said takings."    All of the land was duly abandoned in accordance with the terms of the statute, and to this petition that fact was pleaded in reduction of damages.    The lessee, Cutter, upon a citation from the petitioner appeared in the suit and claimed damages for the loss of his leasehold estate.    At the trial the judge refused to rule as requested by the petitioners that St. 1900, c. 196, was unconstitutional, and submitted certain questions to the jury, who found in substance that the fair market value of the land at the time of the taking was $13,000 ; that the damage to Hellen by reason of

the taking and abandonment was $1,000; that the damage to Cutter by the taking was $1,000, but, as reduced by the abandonment, nothing; and also that Hellen, by his agent, agreed that if the property was abandoned by the respondent for his benefit his damages would be very small. The judge thereupon ordered a verdict for the petitioner Hellen for $1,000 and interest, and at the request of the petitioners the case was reported to this court.

The first question is whether St. 1900, c. 196, is constitutional. In considering this question certain well established rules must be borne in mind. Speaking generally, the power to take land for public use by right of eminent domain is limited, not only as to quantity but as to the nature of the interest taken, by the public necessity. It is said that " the right being based upon necessity cannot be any broader than the necessity." Cooley, Const. Lim. (7th ed.) 808. It therefore generally happens that in cases of land taken under the exercise of this right only an easement is taken, the fee remaining in the owner. A familiar example of this is to be found in the case of land taken for a highway. In such a case, where the easement is lawfully abandoned or discontinued as no longer necessary, the fee is in the owner, free from the easement; but, as stated by Shaw, C. J. in *Harrington* v. *County Commissioners*, 22 Pick. 263, 267, " the enlarged enjoyment which the owner has thereby, is not derived from the public, but is incident to the ownership, which has always subsisted from the laying out of the highway." And in the case of such a lawful abandonment or discontinuance before the assessment of damages, there can be no doubt that the fact of such an ending of the easement can be put in evidence on the question of damages. But the ground of the admissibility of this fact is not that the thing once taken from the owner has been restored to him, but that the evidence tends to show the nature and extent of the thing taken. The thing taken is the use of the land for a highway so long as the public necessity requires, and the sum to which the owner is entitled is the damage by reason of such taking. And that is the rule of damage all the way through, as well at the time of the trial as at the time of the taking. The evidence of a lawful ending of the easement before the trial, whether by discontinuance or otherwise, is admissible, therefore, to make more certain the nature of the ease

ment taken, but not to show that the right to damages has been changed. It is manifest that the lawful ending of such an easement by the public authorities impairs no right of the landowner as to damages. It tends only to define this right as it at first existed.

It is pretty generally conceded, however, in the various State courts, that in some cases it is competent for the State to take for public use the land in fee, so that not even a possibility of reverter is left in the former owner. The idea seems to be that in some cases "the public purposes cannot be fully accomplished without appropriating the complete title; and where this is so in the opinion of the Legislature, the same reasons which support the Legislature in their right to decide absolutely and finally upon the necessity of the taking will also support their decision as to the estate to be taken." Cooley, Const. Lim. (7th ed.) 809, and cases cited in the notes. This principle is thus stated by Field, C. J. in *Burnett* v. *Commonwealth*, 169 Mass. 417: "When land is taken for a public use, it is ordinarily within the discretion of the Legislature to determine whether it shall be taken in fee, so that when the public use is determined the title will remain in the body taking it, or whether it shall be taken only to the extent necessary for the public use, and so long as that use continues."

As hereinbefore stated, in the case before us the fee was taken, leaving not even the possibility of a reverter in the former owner. St. 1882, c. 154, §§ 3, 4, 6. (For other instances of a taking of a fee, see *Dingley* v. *Boston*, 100 Mass. 544; *Page* v. *O'Toole*, 144 Mass. 303; *Titus* v. *Boston*, 161 Mass. 209.) At the time St. 1900, c. 196, was enacted, the fee having passed to the respondent, the petitioners were entitled, under the Constitution and the statutes then in existence, to have their damages paid in money. This was a vested right. It is urged by the respondent that this vested right consisted of a constitutional right to reasonable compensation and of the statutory right to have it assessed and paid in money; and that while the constitutional right could not be impaired by the Legislature the statutory right might be changed at will, provided always that the constitutional right to reasonable compensation was not impaired. And it is urged that the statutory right does not become vested

until it has been fully pursued and damages assessed.   See *Harrington* v. *County Commissioners, ubi supra.*

While it is true that every State has complete control over the remedies it offers to suitors; while it may abolish one class of courts and create another, may abolish old remedies and substitute new, or may abolish even without substitution if a reasonable remedy remains (Cooley, Const. Lim. (7th ed.) 515, 516, and cases cited in the notes thereto); and while, as stated by Parker, C. J. in *Springfield* v. *County Commissioners*, 6 Pick. 501, 508, "there is no such thing as a vested right to a particular remedy," yet a substantive vested right cannot be impaired under the guise of a change in the remedy.

The statute in question did not undertake to define the nature of the thing originally taken, but to change the right to damages.   Before the passage of the statute the petitioners were entitled to have their damages assessed and paid in money.   This was a substantive right.   After the statute they were deprived of this right and were obliged to take land instead of money. This was a change not only in the remedy but in the thing that the petitioners were entitled to have.   It is of no consequence whether the substantive right vests by virtue of a provision in the Constitution or in a statute, provided it is vested.   The remedy may be changed but the right to money cannot be changed.   As to that, no matter how the remedy be changed, the result reached must be in substance the same.   This conclusion is not inconsistent with the decision in *Harrington* v. *County Commissioners, ubi supra,* upon which the petitioners rely.   We are of opinion therefore that the statute is unconstitutional as applicable to this case.

The next question is whether the petitioner Hellen is in a situation to avail himself of that point.   The jury have found that he agreed that if the property was abandoned by the respondent for his benefit his damages would be very small, if any, and that $1,000 would be a reasonable sum for him under that agreement. It is not contended that the finding was not warranted by the evidence ; and the fair inference is that the abandonment was made under that agreement.   Under these circumstances the case is within the well known principle that, where a constitutional provision is designed for the protection of property rights

of a person, it is competent for him to waive the protection and to consent to such action as would be invalid if taken against his will; (Cooley, Const. Lim. (7th ed.) 250, 251, and cases cited in the notes;) and he must be held to have waived his right to insist upon the unconstitutionality of the statute. It does not appear, however, that Cutter waived his rights.

The result is that as to Hellen there should be judgment on the verdict, and as to Cutter, judgment for $1,000 with interest; and it is

*So ordered.*